**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LOWER SUSQUEHANNA RIVERKEEPER ASSOCIATION, <br><br> Plaintiff, <br><br> v. <br><br> JOE DARRAH, INC., d/b.a. J&K SALVAGE, et al., <br><br> Defendants. | CIVIL ACTION NO. 1:25-CV-01285 <br><br> (MEHALCHICK, J.) |

**MEMORANDUM**

Before the Court is Plaintiff Lower Susquehanna River Keeper Association's ("LSRKA") motion for a temporary restraining order and preliminary injunction. (Doc. 28). LSRKA initiated this action on July 14, 2025, by filing a complaint. (Doc. 1). On October 20, 2025, LSRKA filed the operative amended complaint against Defendants Joe Darrah, Inc., d/b/a J&K Salvage, Inc. ("J&K Salvage"), Darrah Realty, L.P. ("Darrah Realty"), Darrah Management, LLC ("Darrah Management"), and Harry J. Darrah, III ("Darrah") (collectively, "Defendants"). (Doc. 20). For the following reasons, LSRKA's motion will be denied without prejudice.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The following factual background is taken from the amended complaint and filings related to the instant motion. LSRKA is an environmental group which has members who utilize the Susquehanna River watershed. (Doc. 20, ¶¶ 22-23). J&K Salvage is a corporation owned, operated, and managed by Joe Darrah, Inc., Darrah Realty, Darrah Management, and Darrah. (Doc. 20, ¶¶ 33-39). J&K Salvage operates a metal shredding facility and scrap

yard located at 1099 Kings Mill Road, Spring Garden Township, York County, Pennsylvania 17403-3485 (the "Facility"). (Doc. 20, ¶ 2). The Facility shreds and recycles ferrous and non-ferrous metals and can process 300 hundred automobiles daily and up to 5,000 tons of material monthly. (Doc. 20, ¶ 3). The Pennsylvania Department of Environmental Protection (the "PADEP") is responsible for regulating the Facility under the Clean Water Act's (the "CWA") National Pollutant Discharge Elimination System ("NPDES") permitting program. (Doc. 20, ¶ 5; Doc. 33-1). On December 1, 2019, the PADEP issued NPDES Permit No. PAS603505 (the "Permit") which allowed Defendants to discharge certain waste from the Facility into the Codorus Creek and into an unnamed tributary of the Codorus Creek (together, the "Waterways"). (Doc. 20, ¶ 6). The Permit expired on November 30, 2024. (Doc. 20, ¶ 7). LSRKA contends that both while the Permit was in effect and after it expired, Defendants discharged pollutants into the Waterways beyond the scope of what the Permit allowed. (Doc. 20, ¶ 8; Doc. 29, at 12). Defendants contend that they complied with the Permit and the PADEP's regulatory edicts at all times relevant to this action. (Doc. 38, at 1-2, 5-6).

On October 20, 2025, LSRKA filed the operative amended complaint alleging four counts under federal and state law. (Doc. 20). In Counts I and II, LSRKA alleges Defendants are liable under the CWA for unauthorized discharges of pollutants into the Waterways and for noncompliance with their NPDES permit conditions. (Doc. 20, ¶¶ 140-60). In Count III, LSRKA alleges that Defendants are liable under the Pennsylvania Clean Streams Law for unauthorized discharge of pollutants into the Waterways. (Doc. 20, ¶¶ 161-66). In Count IV, LSRKA alleges that Defendants are liable under the Resource Conservation and Recovery Act for handling the storage, treatment, and disposal of solid and hazardous waste at the

Facility which presents an imminent and substantial endangerment to health or the environment. (Doc. 20, ¶¶ 167-76).

On February 25, 2026, an explosion and fire occurred at the Facility. (Doc. 29, at 6; Doc. 38, at 2). According to LSRKA, this incident was the result of Defendants illegally operating the Facility without a permit, as required by the CWA. (Doc. 29, at 6). In response to the fire and Defendants allegedly continuing to illegally pollute the Waterways, LSRKA filed the instant motion for a for a temporary restraining order and preliminary injunction on March 13, 2026, along with a brief in support. (Doc. 28; Doc. 29). In its motion, LSRKA requests the Court issue a temporary restraining order and preliminary injunction "halting Defendants' illegal and dangerous operations until they obtain an NPDES permit from the [PADEP] and requiring Defendants—at long last—to put in place the measures required to protect the environment and public health." (Doc. 29, at 7-8). On March 16, 2026, the Court held a conference call between the parties and issued a briefing order. (Doc. 32).

After LSRKA filed its motion and the Court held its conference call, but before Defendants could file a brief in opposition, the PADEP issued an order requiring Defendants to, amongst other things, "cease all operation of the metal shredder and any other equipment and/or machinery [at the Facility] used to process metal, wood waste, and all wastes," and "begin to remove all solid wastes from the [Facility]." (Doc. 33-1, at 15-16). Subsequently, LSRKA filed a revised proposed order which continues to request that the Court issue a preliminary injunction ordering Defendants to "cease any and all operations at the Facility until such time as Defendants obtain a Replacement NPDES Permit for such operations at the Site from PADEP." (Doc. 36-1). LSRKA also filed a letter from the PADEP stating that the PADEP believed that LSRKA's proposed relief is consistent with the PADEP's order.

(Doc. 37-1). On March 20, 2026, Defendants filed a brief in opposition to LSRKA's motion. (Doc. 38). On March 24, 2026, LSRKA filed a reply brief. (Doc. 39). Accordingly, this matter is ripe and ready for disposition.

## II.    LEGAL STANDARD

Four factors govern a district court's decision in issuing a preliminary injunction: 1) whether the movant has shown a reasonable probability of success on the merits; 2) whether the movant will be irreparably injured by denial of the relief; 3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and 4) whether granting the preliminary relief will be in the public interest. *Grill v. Aversa*, 908 F. Supp. 2d 573, 591 (M.D. Pa. 2012); *Gerardi v. Pelullo*, 16 F.3d 1363, 1373 (3d Cir. 1994); *SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1254 (3d Cir. 1985)); *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 170–71 (3d Cir. 2001).

A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. *See Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426–27 (3d Cir. 1994). In order to satisfy this exacting standard, the party moving for a preliminary injunction must carry its burden of demonstrating both: 1) likelihood of success on the merits; and 2) the existence of irreparable injury from the alleged misconduct. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797 (3d Cir.1989). If the movant fails to carry this burden on these two elements, the motion should be denied since a party seeking such relief must "demonstrate both a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir.1989) (emphasis in original) (quoting

4

*Morton v. Beyer*, 822 F.2d 364 (3d Cir.1987)). Further, given the extraordinary nature of this form of relief, a motion for preliminary injunction places precise burdens on the moving party.

As a threshold matter, it is a movant's burden to show that the "preliminary injunction must be the only way of protecting the plaintiff from harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir.1992) (emphasis in original, citations omitted). Therefore, "upon an application for a preliminary injunction to doubt is to deny." *Madison Square Garden Corp. v. Braddock*, 90 F.2d 924, 927 (3d Cir.1937).

A preliminary injunction "may not be used simply to eliminate a possibility of a remote future injury." *Holiday Inns of Am., Inc. v. B&B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969). "[T]he irreparable harm must be actual and imminent, not merely speculative." *Angstadt ex rel. Angstadt v. Midd-West Sch.*, 182 F. Supp. 2d 435, 437 (M.D. Pa. 2002). "[M]ore than a risk of irreparable harm must be demonstrated. The requisite for injunctive relief has been characterized as a 'clear showing of immediate irreparable injury,' or a 'presently existing actual threat . . . .'" *Continental Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (citations omitted). "A preliminary injunction cannot be issued based on past harm. The purpose of a preliminary injunction is to prevent *future* irreparable harm." *Fisher v. Goord*, 981 F. Supp. 140, 168 (W.D.N.Y. 1997) (emphasis in original). Thus, the relevant inquiry is whether the party moving for injunctive relief is in danger of suffering irreparable harm at the time the preliminary injunction is to be issued.

Moreover, "[t]he 'requisite feared injury or harm must be irreparable—not merely serious or substantial,' and it 'must be of a peculiar nature, so that compensation in money cannot atone for it.'" *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (quoting *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). "In order to demonstrate irreparable harm

the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the *only* way of protecting the plaintiff from harm." *Instant Air Freight Co.*, 882 F.2d at 801. "The word irreparable connotes 'that which cannot be repaired, retrieved, put down again, atoned for . . .'" *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir.1994) (citations omitted). If the record does not support a finding of both irreparable injury and a likelihood of success on the merits, then a preliminary injunction cannot be granted. *Marxe v. Jackson*, 833 F.2d 1121 (3d Cir. 1987).

## III.    DISCUSSION

According to LSRKA, it is entitled to injunctive relief because 1) environmental injury such as Defendants polluting the Waterways is inherently irreparable injury, 2) it is likely to succeed on the merits because the CWA unambiguously prohibits unauthorized discharges into the waterways without a valid NDPES permit, which Defendants have not had since 2024, and 3) both the balance of equities and the public interest favor injunctive relief because of the scope of the environmental damage Defendants are causing with their pollution of the Waterways. (Doc. 29, at 16-24). The Court finds that LSRKA is not entitled to injunctive relief both because LSRKA's motion is moot due to the PADEP providing the relief sought and because LSRKA cannot show irreparable injury in light of the PADEP's order. [1]

---

[1] During the Court's March 16, 2026, conference call on this matter, the parties disputed whether an evidentiary hearing is necessary on the motion for injunctive relief. LSRKA asserted a hearing was not necessary; Defendants claimsed that it is. In their brief in opposition, Defendants contend that they are entitled to an evidentiary hearing unless the Court determines that LSRKA's motion should be dismissed as moot or the Court determines that LSRKA is not entitled to relief regardless of whether the Court accepts LSRKA's assertions as true. (Doc. 38, at 4-5). LSRKA reasserts in its reply brief that an evidentiary hearing is not necessary. (Doc. 39, at 5-6 n.1). "[A] district court is not obliged to hold a

A.  LSRKA's MOTION IS MOOT DUE TO THE PADEP's ORDER.

LSRKA requests a preliminary injunction "halting Defendants' illegal and dangerous operations until they obtain an NPDES permit from the [PADEP] and requiring Defendants—at long last—to put in place the measures required to protect the environment and public health." (Doc. 29, at 7-8). In its revised proposed order, LSRKA specifically requests that the Court order Defendants to "cease any and all operations at the Facility until such time as Defendants obtain a Replacement NPDES Permit for such operations at the Site from [the] PADEP . . . [or in the alternative] Defendants . . . obtain a No Exposure Certification." (Doc. 36-1, at 6). LSRKA also requests the Court require Defendants to comply with certain testing, monitoring, compliance, and remediation measures. (Doc. 36-1, at 6-23). On March 17, 2026, the PADEP issued an order requiring Defendants to 1) "cease accepting all solid wastes at the [Facility]," 2) "cease operation of the metal shredder and any other equipment and/or machinery used to process metal, wood waste, and all wastes [at the Facility]," 3) implement a new CWA compliance plan, 4) obtain a new NPDES permit or a "No Exposure Certification for the [Facility]," and 5) comply with certain testing, monitoring, compliance, and remediation measures. (Doc. 33-1, at 16-18, 30-33). Defendants aver that "[t]he most prudent course of action is to deny the Preliminary Injunction as moot because

---

hearing when the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1176 (3d Cir. 1990); *see Pletcher v. Giant Eagle Inc.*, No. CV 2:20-754, 2020 WL 6263916, at *3 (W.D. Pa. Oct. 23, 2020) (denying a motion for a preliminary injunction without a hearing); *see also Reed v. Chambersburg Area Sch. Dist. Found.*, No. 1:13-CV-00644, 2014 WL 1028405, at *19 (M.D. Pa. Mar. 17, 2014) (same). For the reasons discussed above, the Court denies LSRKA's motion without a hearing because its motion is moot in light of the PADEP's March 17, 2026, order and LSRKA does not establish irreparable harm in light of that order. (Doc. 28; Doc. 33-1).

of the recent PADEP order." (Doc. 38, at 4 n.2). LSRKA counters that the PADEP's order does not render its motion moot because the PADEP filed a letter with the Court informing the Court that it views the requested injunctive relief as consistent with and complimentary to its order. (Doc. 37-1; Doc. 39, at 9-10).

Courts in the Third Circuit have found that motions for a preliminary injunction should be denied as moot where, after filing their motion, the plaintiff receives the relief sought before the court can rule on the motion. *See Solid Rock Baptist Church v. Murphy*, 480 F. Supp. 3d 585, 594 n.8 (D.N.J. 2020) (noting that a motion for a preliminary injunction became moot where the government provided the relevant relief sought by voluntarily rescinding a challenged policy); *see also Enoch v. Perry*, No. 1:19-CV-00026, 2019 WL 2393783, at *3 (W.D. Pa. June 6, 2019) (sating "because the requested relief has been provided, the Plaintiff's request for a preliminary injunction on this claim is denied as moot"); *see also Smith v. Powanda*, No. 1:19-CV-2174, 2020 WL 1183682, at *2 (M.D. Pa. Mar. 12, 2020) (stating "[b]ecause [Plaintiff] has already [received the relief] that he is seeking in the instant motion, his motion is rendered moot"). The relief LSRKA seeks in its motion is that the Court order Defendants to halt operations at the Facility until Defendants obtain a new NDPES permit or a No Exposure Certification and comply with testing, monitoring, and remediation requirements. (Doc. 29, at 7-8; Doc. 36-1). The PADEP has already ordered that relief. (Doc. 33-1). The LSRKA and the PADEP agree that the requested injunctive relief is consistent with the PADEP's order and LSRKA does not identify any relief it seeks in its motion which the PADEP's order does not already provide. (Doc. 37-1; Doc. 39, at 9-10). Absent Defendants refusing to follow the PADEP's order or the PADEP rescinding its order, LSRKA's motion is moot. *See Solid Rock Baptist Church*, 480 F. Supp. 3d at 594 n.8; *see also*

*Enoch*, 2019 WL 2393783, at \*3; *see also Smith*, 2020 WL 1183682, at \*2. Accordingly, the Court **DENIES** LSRKA's motion **without prejudice** to LSRKA's ability to file a renewed motion should it uncover evidence that Defendants are not complying with the PADEP's order or if the PADEP rescinds its order. (Doc. 28). Even though this motion is moot, the Court will review the preliminary injunction factors.

B. LSRKA IS NOT ENTITLED TO INJUNCTIVE RELIEF UNDER THE PRELIMINARY INJUNCTION FACTORS.

According to LSRKA, it is entitled to injunctive relief because 1) Defendants have inflicted irreparable injury by polluting the Waterways, 2) LSRKA is likely to succeed on the merits because Defendants are impermissibly discharging into the Waterways without an NDPES permit, and 3) the extent of the environmental injuries the Defendants have inflicted weigh both the balance of the equities and the public interest in favor of injunctive relief. (Doc. 29, at 16-24). Defendants counter that 1) there is no risk of irreparable injury given the PADEP's order, 2) LSRKA is unlikely to succeed on the merits because Defendants have complied with all CWA regulations, 3) the balance of equities weigh against injunctive relief because of the immense potential harm to the Defendants' employees, and 4) the public interest favors allowing this matter to be resolved by the PADEP rather than by the Court. (Doc. 38, at 5-12).

**1. LSRKA has not demonstrated irreparable injury.**

In support of its argument that LSRKA will suffer irreparable injury absent a preliminary injunction, LSRKA avers "[a]llowing Defendants to continue its unlawful operations will only compound the environmental damage, further impairing [LSRKA's members'] ability to use and enjoy the affected waterways." (Doc. 29, at 19-21). The Court finds that in light of the PADEP's order, LSRKA's proffered irreparable injury is insufficient

to sustain injunctive relief because the PADEP has already ordered Defendants to cease all operations which may pollute the Waterways. (Doc. 33-1).

A court must deny a motion for a preliminary injunction if the plaintiff does not show an irreparable injury even if the plaintiff shows likelihood of success of the merits. *See Instant Air Freight Co.*, 882 F.2d at 800 (reversing a grant of a preliminary injunction because even though the movant was likely to succeed on the merits, the movant did not present evidence of an irreparable injury and "irreparable injury must be present for a preliminary injunction to issue"); *see also Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 219 (3d Cir. 2014) (stating "[a]bsent a showing of irreparable harm, a plaintiff is not entitled to injunctive relief, even if the other three elements are found"); *see also ASI Bus. Sols., Inc. v. Otsuka Am. Pharm., Inc.*, 233 F. Supp. 3d 432, 440 (E.D. Pa. 2017) (stating "the Court need not consider [likelihood of success on the merits], because the Court finds that [Plaintiff] has failed to clearly demonstrate irreparable injury, and this alone precludes the issuance of a preliminary injunction"). A plaintiff fails to present irreparable injury where the record shows the plaintiff may obtain relief outside of the proposed preliminary injunction. *See Instant Air Freight Co.*, 882 F.2d at 801 (stating "[t]he preliminary injunction must be the only way of protecting the plaintiff from harm"); *see also Pella Prods., Inc. v. Pella Corp.*, No. 3:18-CV-01030, 2018 WL 2734820, at *10 (M.D. Pa. June 7, 2018) (stating the same). Further, a plaintiff fails to establish irreparable harm if they only present evidence of past harm. *See Freedom Med. Inc. v. Whitman*, 343 F. Supp. 3d 509, 530 (E.D. Pa. 2018) (stating "a showing of past harm, without more, is insufficient to justify the issuance of a preliminary injunction"); *see also Ecosave Automation, Inc. v. Delaware Valley Automation, LLC*, 540 F. Supp. 3d 491, 507 (E.D. Pa. 2021) (stating the same); *see also Ali v. FCI Allenwood*, No. 3:CV-17-1171, 2017 WL 3008545, at *3

(M.D. Pa. July 14, 2017) (noting that a preliminary injunction cannot be based on past harm and finding no irreparable injury where the defendants already took actions to prevent a past harm from reoccurring).

In its initial brief in support, LSRKA argues that Defendants continue to discharge pollutants into the Waterways which constitutes irreparable harm. (Doc. 29, at 19-21). LSRKA presents evidence that its members and the PADEP conducted tests around the Waterways and found dangerous pollutants which likely came from the Facility. (Doc. 29, at 20-21). The Court agrees that environmental injury, such as pollution to a waterway or wetland, may constitute an irreparable injury. *See Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 545 (1987) (stating "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.,* irreparable"); *see also State of Delaware Dep't of Nat. Res. & Env't Control v. U.S. Army Corps of Eng'rs (USACOE)*, 681 F. Supp. 2d 546, 561 (D. Del. 2010), *as amended* (Jan. 29, 2010) (noting that "[i]njury to the environment constitutes irreparable harm"). However, the PADEP already ordered Defendants to "cease accepting all solid wastes at the [Facility]," "cease operation of the metal shredder and any other equipment and/or machinery used to process metal, wood waste, and all wastes [at the Facility]," and "begin to remove all solid wastes from the [Facility], including but not limited to autofluff, scrap metal, wood waste, automotive fluids, tires, batteries, any items present in the recycling drop off building, and wastes specified in the revoked Waste Permit." (Doc. 33-1, at 16). The measurements and testing results LSRKA present are evidence of pollutants Defendants already discharged into the Waterways. (Doc. 29, at 20-21). Past harm, on its own, cannot constitute irreparable injury for purposes of a preliminary injunction and thus, the Court cannot find irreparable

11

injury considering that the PADEP already ordered Defendants to stop all pollution causing activities. (Doc. 33-1, at 16); *see Freedom Med. Inc.*, 343 F. Supp. 3d at 530; *see also Ecosave Automation, Inc*, 540 F. Supp. 3d at 507; *see also*, 2017 WL 3008545, at *3. The PADEP order also indicates that LSRKA has received relief outside a preliminary injunction, and thus, LSRKA cannot establish that a preliminary injunction is the only means of preventing irreparable harm. *See Instant Air Freight Co.*, 882 F.2d at 801; *see also Pella Prods., Inc.*, 2018 WL 2734820, at *10.

LSRKA argues that the Court should issue a preliminary injunction based on the possibility that Defendants will ignore the PADEP's order. (Doc. 39, at 11 n.3). According to LSRKA, Defendants are likely to continue to operate the Facility despite the PADEP's order because they previously defied other orders. (Doc. 39, at 11 n.3). However, the Court may not find irreparable harm based on speculation as to what Defendants may do. *See Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000) (stating "the risk of irreparable harm must not be speculative"); *see also Moneyham v. Ebbert*, 723 F. App'x 89, 92 (3d Cir. 2018) (nonprecedential) (stating "[t]he irreparable harm alleged must be actual and imminent, not merely speculative"); *see also Zoom Tan, Inc. v. 1024 Mkt. St. Inc.*, No. CV 24-324, 2025 WL 579630, at *6 (W.D. Pa. Feb. 21, 2025) (stating "[a] claim of irreparable harm cannot be based on speculation or hypothesis"). The PADEP explicitly ordered Defendants to cease the Facility's operations, and the Court may not find irreparable harm based on speculation that Defendants will not comply with the PADEP's order. (Doc. 33-1, at 16). Accordingly, LSRKA's motion for a preliminary injunction fails regardless of the other preliminary injunction factors. *See Instant Air Freight Co.*, 882 F.2d at 800 (noting that a court must deny injunctive relief where there is no irreparable harm regardless of the other factors); *see also*

12

*Ferring Pharms., Inc.*, 765 F.3d at 219 (noting the same); *see also ASI Bus. Sols., Inc.*, 233 F. Supp. 3d at 440 (same). The Court **DENIES** LSRKA's motion **without prejudice** to LSRKA's ability to file a renewed motion should LSRKA uncover evidence of Defendants defying the order or if the PADEP rescinds the order. (Doc. 28). For the sake of completeness, the Court evaluates the remaining factors.

### 2.  LSRKA demonstrates they are likely to succeed on the merits.

LSRKA avers that they are likely to succeed on the merits because the CWA imposes strict liability on defendants who discharge pollutants either without a permit or beyond the limits of a permit and Defendants have both discharged pollutants into the Waterways after the Permit expired and discharged pollutants beyond the Permit's limits while it was in effect. (Doc. 29, at 16-19). Defendants counter that they complied with the terms of the Permit and only operate without a renewed Permit because the PADEP has not yet granted their application for one. (Doc. 38, at 5-6).

Under the CWA, "the discharge of any pollutant by any person" into navigable waters is generally unlawful. 33 U.S.C.A. § 1311 (a). However, an individual or corporation may obtain a NDPES permit which allows them to discharge pollutants into navigable waters subject to "limits and conditions in [the] NPDES permit." *United States v. Allegheny Ludlum Corp.*, 366 F.3d 164, 171 (3d Cir. 2004). The CWA imposes strict liability for individuals or corporations who discharge pollutants in navigable waters without a NDPES permit or outside of the limits and conditions of a NDPES permit. *See Allegheny Ludlum Corp.*, 366 F.3d at 175 (stating "the CWA unambiguously imposes strict liability for unlawful discharges" (emphasis omitted)); *see also Lower Susquehanna Riverkeeper Ass'n v. Republic Servs. of Pennsylvania LLC*, No. 1:23-CV-00044, 2025 WL 976694, at *9 (M.D. Pa. Mar. 31, 2025)

13

(noting that the CWA imposes strict liability and granting a plaintiff summary judgment where the defendant conceded that they exceeded the maximum discharge limits provided by their NPDES permit).

The Court finds that LSRKA sufficiently demonstrates it is likely to succeed on the merits because it presents the PADEP's order in which the PADEP declares and presents evidence that Defendants discharged pollutants into the Waterways despite not having an active NDPES permit. (Doc. 33-1, at 15). Given that the CWA imposes strict liability, this discharge would constitute a violation of the CWA. *See Allegheny Ludlum Corp.*, 366 F.3d at 175; *see also Republic Servs. of Pennsylvania LLC*, No. 1:23-CV-00044, 2025 WL 976694, at *9. However, as discussed *supra* Section III.B.1, LSRKA fails to present evidence of irreparable injury and thus is not entitled to injunctive relief regardless of likelihood of success on the merits. *See Ferring Pharms., Inc.*, 765 F.3d at 219 (noting that a court may not issue a preliminary injunction absent a showing of irreparable injury regardless of likelihood of success on the merits); *see also ASI Bus. Sols., Inc.*, 233 F. Supp. 3d at 440 (noting the same).

**3. The balance of equities and public interest weigh against injunctive relief.**

LSRKA avers that the balance of equities and public interest weigh in favor of injunctive relief because the amount of environmental damage the Facility causes the Waterways outweighs any economic injury to Defendants. (Doc. 29, at 21-24). Defendants counter that injunctive relief will cause harm against its employees and that the public interest favors letting the regulatory process play out. (Doc. 38, at 9-11).

Where a plaintiff fails to demonstrate either likelihood of success on the merits or irreparable harm, courts do not have to analyze the balance of the equities or the public interest but may do so for sake of completeness. *See Cornette v. Graver*, 473 F. Supp. 3d 437,

477 (W.D. Pa. 2020). In light of the PADEP order, the Court finds that both the balance of equities and the public interest weigh against injunctive relief. Both LSRKA's balance of equities argument and public interest argument rely on an assumption that if the Court does not issue an injunction, Defendants will continue operations at the Facility and continue to pollute the Waterways. (Doc. 29, at 21-24). However, as discussed *supra* Section III.B.1, the PADEP's order already prevents Defendants from continuing to operate the Facility, and thus, there is no longer a risk of harm to the environment absent injunctive relief. (Doc. 33-1). Where a plaintiff faces no imminent, irreparable injury, injunctive relief is of "limited value." *Cornette*, 473 F. Supp. 3d at 477. Both a defendant and the public have an interest in ensuring that federal courts do not needlessly interfere with lawful state proceedings involving that defendant. *See Lewis v. Keuerleber*, No. 1:25-CV-447, 2025 WL 1550110, at \*6 (M.D. Pa. May 30, 2025) (finding that both the balance of equities and the public interest weighed in favor of denying injunctive relief where the plaintiff failed to establish they risked imminent, irreparable injury and injunctive relief risked interference with state proceedings). Accordingly, the Court **DENIES** LSRKA's motion a temporary restraining order and preliminary injunction **without prejudice**. (Doc. 28).

## IV.    CONCLUSION

For the foregoing reasons, LSRKA's motion for a temporary restraining order and preliminary injunction (Doc. 28) is **DENIED without prejudice** to LSRKA's ability to file a renewed motion should it discover that Defendants are not complying with the PADEP's March 17, 2026, order (Doc. 33-1) or if the PADEP rescinds that order.[2] In light of this ruling,

---

[2] The Court notes that Defendants assert, without support, that this matter should be stayed pending the resolution of the PADEP's proceedings against them. (Doc. 38, at 6). A

the Court **CANCELS** the scheduled April 2, 2026, hearing.

An appropriate Order follows.

BY THE COURT:

Dated: March 26, 2026

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**

---

court should not stay a matter absent a showing that a stay is necessary and a party seeking a stay bears the burden of establishing the necessity of the stay. *See Akishev v. Kapustin*, 23 F. Supp. 3d 440, 445 (D.N.J. 2014) (noting that courts must be "mindful that the stay of a civil proceeding constitutes an extraordinary remedy" and that a party seeking a stay must establish the stay is warranted (citations and internal quotations omitted)); *see also Doe (A.A.M.) v. Wyndham Hotels & Resorts, Inc.*, No. 24-CV-11502 (ES) (CLW), 2025 WL 1911578, at *2 (D.N.J. July 11, 2025) (noting the same). The Court declines to stay this matter based on Defendants' statement alone, without prejudice to Defendants filing a motion to stay if they choose to do so.